Thomas Aloi, J.
This is a motion to determine whether the relocation funds, pursuant to the Federal Uniform Relocation Act (U. S. Code, tit. 42, § 4601 et seq.), in the hands of the Syracuse Urban Renewal Agency are subject to a restraining notice issued pursuant to CPLR 5222. .
The defendants in the instant action were tenants of the plaintiff. They resided in homes that failed to meet the requirements of the Syracuse Housing Code. Due to this fact, the Onondaga County Department of Social Services, pursuant to section 143-b of the Social Services Law, withheld rent pending the making of necesary repairs by the plaintiff.
Subsequently, plaintiff sold the properties in which the defendants resided and brought nonpayment proceedings against the tenants which resulted in judgments being taken against the defendants.
The defendants were displaced pursuant to a Federally assisted program to provide new housing. As a result, they became eligible under the “Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 ” (U. S. Code tit. 42, § 4601 et seq.), for certain relocation funds to aid in their relocation, moving and transfer.
The issue to be resolved upon this motion is: Are such relocation funds in the hands of the Syracuse Urban Renewal Agency a proper object of a restraining notice pursuant to CPLR 5222?
In order to determine whether such funds are properly subject to CPLR 5222 a look at the Uniform Relocation Assistance Act will indicate the nature and object of such funds.
*362 Section 4621 of title 42 of the United States Code states: “Declaration of policy. The purpose of this subchapter is to establish a uniform policy for the fair and equitable treatment of persons displaced as a result of Federal and federally assisted prograrhs in order that such persons shall not suffer disproportionate injuries as a result of programs designed for the benefit of the public as a whole. ’ ’
Section 4622 States: “Moving and related expenses, (a) General provision. Whenever the acquisition of real property for a program or project undertaken by a Federal agency in any State will result in the displacement of any person on or after January 2, 1971, the head of such agency shall make a payment to any displaced person, upon proper application as approved by such agency head, for —
“ (1) actual reasonable expenses in moving himself, his family, business, farm operation, or other personal property;
“ (2) actual direct losses of tangible personal property as a result of moving or discontinuing a busines or farm operation, but not to exceed an amount equal to the reasonable expenses that would have been required to relocate such property, as determined by the head of the agency; and
“ (3) actual reasonable expenses in searching for a replacer ment business or farm.”
From the above sections, it clearly appears that the relocation funds provided under the above act provides qualified displaced persons with actual reasonable moving expenses, actual direct loss of personal property and costs for finding a new location.
It would appear in this instance, that a restraint of these funds in the hands of the Syracuse Urban Renewal Agency, as provided under CPLR 5222, would greatly interfere in the proper administration of the Federal Uniform Relocation Act (U. S. Code, tit. 42, § 4601 et seq.). We therefore have a conflict between a valid State provision under our CPLR relative to the enforcement of money judgments and the Federal law relative to relocation benefits under the Federal Relocation Act.
The court in Matter of Marino v. Town of Ramapo (68 Misc 2d 44, 57) discusses a situation wherein a conflict between State law and Federal law exists, the court stated: ‘ ‘ The supremacy clause, rather appropriately, means what it says: that the * Laws of the United States * * * shall be the supreme Law of the Land’ (art. VI, § 2). This principle is commonly referred to as the doctrine of pre-emption. ■* * * The pre-emption doctrine requires State laws to defer to Federal legislation where either of three elements exist: (1) the scheme of Federal legislation is so complete and pervasive that no room is left for the *363 State to supplement it; (2) the Federal interest is so dominant that State laws on the same subject must yield; or (3) the enforcement of the State statute presents a substantial conflict with the administration of the Federal program ” (emphasis added).
The court went on to say (p. 58): “ In order to properly eval-V. uate the doctrine of pre-emption to a particular fact-pattern, the court must. consider the underlying policy considerations of the respective legislation, which requires an analysis of what is being regulated, by whom, for what purpose, statutory language, Congressional intent and potential frustration of Federal policy” (emphasis added).
Although the doctrine of pre-emption, as stated above, is not strictly applicable in this case in that the State law (CPLR 5222) involved herein is not directly concerned with housing legislation, its underlying purpose is applicable. The attachment, or restraint of the relocation funds in the hands of the local Syracuse Urban Renewal Agency, or any local housing agency, would effectiyely frustrate the purposes of the Federal legislation, in that it would prevent these funds in the first instance from reaching eligible displacees. These funds are basically remedial in nature, intended to compensate eligible displacees for injury or hardship caused by the relocation, in an attempt to make them whole. In the instant case such funds are obviously needed in that all the defendants were receiving assistance under the Social Services Program in Onondaga County.
It is therefore the court’s opinion that any restraint pursuant to CPLR 5222 of the relocation funds in the hands of the Syracuse Urban Renewal Agency is improper in that it would effectively frustrate the implementation of a valid and needed Federal program to improve our urban areas.
However, this decision in no way restricts the utilization of any other post-judgment remedies once the funds are actually in the hands of the recipients.